UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALPENSPRUCE EDUCATION SOLUTIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> CASCADE PARENT LIMITED; and PARALLELS INC., <br><br> Defendants. | CASE NO. C23-692 MJP <br><br> ORDER ON RENEWED MOTION TO SEAL |

This matter comes before the Court on Defendants' Unopposed Renewed Omnibus Motion to Seal. (Dkt. No 137.) Having reviewed the Motion and all supporting materials, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

Defendants ask the Court to seal a variety of documents the Court ordered unsealed. (Mot. (Dkt. No. 137).) The Court denied Defendants' prior sealing request because they provided no evidence to support their assertion that compelling interests outweighed the public's right of

access to the docket. (See Court's Order on Motions to Seal (Dkt. No. 136).) Defendants have now provided a declaration from their CEO, Christa Quarles, who attempts to lay the foundation for sealing documents that fall into six different categories.

## ANALYSIS

### A.     Legal Standard

Under the "compelling interest" test, which applies here, the Court must "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation and quotation omitted). The Court may only seal records if it "base[s] its decision on a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." Id. (citation and quotation omitted). "The burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm." Foltz v. State Farm Mutual Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003) (citation and quotation omitted). The Local Rules require the party seeking to keep materials under seal to show: (1) "the legitimate private or public interests that warrant the relief sought"; (2) "the injury that will result if the relief sought is not granted"; and (3) "why a less restrictive alternative to the relief sought is not sufficient." Local Civil Rule 5(g)(3)(B). "Evidentiary support from declarations must be provided where necessary." Id.

### B.     Marketing Materials

Defendants ask the Court to seal two documents related to their marketing strategies. Defendants' CEO, Christa Quarles, claims that an internal dictionary and a set of internal editorial guidelines are part of Defendants' "distinctive marketing strategies to create a

1  competitive advantage." (Declaration of Christa Quarles ¶ 5 (Dkt. No. 138).) The "internal

2  dictionary," is a one-page document that describes Defendants' "brand architecture."

3  (Declaration of Pam Jacobson Ex. 14.) And the internal editorial guidelines appears to be a two-

4  page document identifying Defendants' "brand pillars and sub-brand architecture." (Declaration

5  of Pam Jacobson Ex. 15.) Quarles claims that "[t]he disclosure of this information would provide

6  Defendants' competitors with the ability to mimic Defendants' marketing strategies and thereby

7  unfairly compete with Defendants." (Quarles Decl. ¶ 5.) And she concludes that "[t]he loss of

8  competitive advantage in marketing strategy would result in significant financial harm both to

9  existing sales and in terms of the investment Defendants would need to make in developing

10 alternative, effective marketing strategies to regain competitive advantage." (Id.)

11       Accepting Quarles' uncontroverted belief that the disclosure of this information would

12 result in a significant harm to Defendants, the Court finds compelling interests outweigh the

13 public's right to view the Court's docket. Quarles has adequately explained how this specific

14 information could be used to Defendants' detriment and cause a significant financial harm.

15 Accordingly, the Court GRANTS the Motion as to Exhibits 14 and 15 to the Jacobson

16 Declaration and ORDERS them to be SEALED. (Dkt. No. 76.)

17 **C.    Vanderhart's Rebuttal Report**

18       Defendants ask the Court to seal portions of Jennifer Vanderhart's expert rebuttal report

19 that contains purportedly confidential financial information and customer data analytics and

20 website traffic. Quarles states that "[t]he disclosure of this information would harm Defendants

21 by providing Defendants' competitors with information about Defendants' revenues, marketing

22 expenditures, and customers, all of which Defendants' competitors could use to devise strategies

23 to compete against Defendants." (Quarles Decl. ¶ 6.) She claims that armed with this

24

information, competitors could "directly compete for, and win, business from Defendants' customers, causing financial harm to Defendants." (Id.)

Quarles' declaration fails to provide enough specificity to satisfy Defendants' burden. Quarles does not claim that the financial harm would be significant and, more importantly, she does not link any of the purported harm to the specific information within this voluminous material she believes is sensitive and confidential. Quarles has not provided an "identifiable, significant harm" and the necessary linkage between the information at issue and that claimed harm. Foltz, 331 F.3d at 1131. The Court therefore DENIES the Motion as to the rebuttal report.

**D.    Website Analytics**

Defendants ask the Court to seal portions of Ran Kivetz's deposition testimony and briefing that cites it, as well as his reports, on the theory that they reveal website analytics whose disclosure could harm Defendants. Quarles contends that the website traffic and data analytics is confidential information whose disclosure "would provide Defendants' competitors with information about Defendants' marketing strategies, which competitors could use to Defendants' disadvantage" by "using this information as a benchmark to evaluate and optimize their own website search engine performance and customer interactions with their websites." (Quarles Decl. ¶ 7.) Quarles claims that "[t]he disclosure of this information to Defendants' competitors would thereby harm Defendants by providing its competitors with information about how to compete with Defendants, thereby likely resulting in lost customer leads and lost sales." (Id.)

There are two problems with this request. First, Quarles has not identified a "significant" and identifiable harm. Second, the claimed harm appears too causally attenuated from the release of the website analytics to be considered likely. Based on this inadequate factual support, the Court DENIES the Motion as to this information.

ORDER ON RENEWED MOTION TO SEAL - 4

### E. Agreement with School District

Defendants ask the Court to seal drafts of a purportedly confidential agreement with a third-party school district to license some of Defendants' products. Quarles claims that the document contains "insights concerning Defendants' licensing terms with any another customer" that "could be used by customers to the detriment of Defendants in future negotiations of similar agreements." (Quarles Decl. ¶ 8.) Quarles also believes that Defendants' competitors could use this information to mimic Defendants' licensing terms or to market more effectively to Defendants' current and future customers. (Id.) Together, Quarles claims, the document's disclosure "is likely to cause harm to Defendants, either by causing Defendants to accept less-advantageous contract terms or by causing lost sales." (Id.)

The Court is not convinced that Quarles has adequately described an "identifiable, significant harm" that will occur without sealing. Foltz, 331 F.3d at 1131. Quarles does not represent that the terms of this agreement are standard to the company or that the terms were ever agreed to by Defendants. This undermines Quarles' claim that this information could harm Defendants in future negotiations. And the harm itself appears to be remote and largely conjectural. The evidence provided fails to satisfy the Court that Defendants have shown a compelling interest in sealing the materials. The DENY the Motion as to this document.

### F. Organizational Chart

Defendants ask the Court to seal a one-page organizational chart that lists the various legal entities that form the multinational company now known as Alludo. Quarles claims that this shows the relationship between Defendants' subsidiaries and related entities and that "[c]ompetitors could use this confidential information to mimic Defendants' organizational structure, to poach employees, or to compete with Defendants in connection with potential

ORDER ON RENEWED MOTION TO SEAL - 5

mergers or acquisitions." (Quarles Decl. ¶ 9.) She claims that "[t]he loss of competitive standing and sales, the loss of employees and the loss of potential merger or acquisition opportunities to competitors would cause significant and longstanding harm to Defendants." (Id.)

The Court does not find compelling interests here outweigh the public's right of access. The Court does not find Quarles' explanation sufficient to show how the information in this organizational chart might be reasonably be used to Defendants' disadvantage. It is unclear how another company might "mimic" Defendants' structure and how that would cause any harm to Defendants. And the Court is also left without sufficient explanation of how a competitor could "poach" employees or compete with Defendants in mergers and acquisitions with the organizational information in the public domain. The Court accepts that loss of competitive standing, employees, and potential merger/acquisitions could cause significant harm, but the Court finds an absence of information linking the organizational chart's revelation to those claimed harms. The Court therefore DENIES the Motion as to this document.

**G.      Defendants Documents in Education Space**

Defendants ask the Court to seal a list of their customers in the education space. Quarles claims that disclosure "would enable Defendants' competitors to target Defendants' customers" and that "[t]his targeting would inevitably lead to lost customers and lost sales." (Quarles Decl. ¶ 10.) Quarles concludes that "[t]he loss of customers and sales would cause significant harm to Defendants." (Id.)

Here, Quarles has identified with specificity a harm she reasonably believes would be significant, and how the specific information could be used to cause that harm. Letting other companies know the schools with whom Defendants do business could give competitors a ready list of leads that could lead to loss of sales to Defendants. The Court therefore GRANTS the

Motion as to this document and ORDERS it to be SEALED. (Jacobson Decl. Ex. 17 (Dkt. No. 76).)

**H.    Email re: Potential Acquisition**

Defendants ask the Court to seal an email exchange between Quarles and an individual from Wedbush Securities who approached her regarding acquiring another tech company. Quarles claims that this document's revelation could harm Defendants "by providing the potential acquisition target with confidential information concerning Defendants' acquisition strategies and valuation of the target." (Quarles Decl. ¶ 11.) Quarles claims that the email "would also provide competitors with information about this potential acquisition, enabling those competitors to pursue the acquisition." (Id.) Quarles concludes that "disclosure of the information contained in the emails concerning this potential acquisition would cause harm to Defendants both by driving up the cost of the acquisition and potentially by attracting competitors to this acquisition, which may either drive up cost or lead to the loss of the opportunity altogether." (Id.)

The Court here does not find sufficient information in the email itself to connect to the claimed, significant harm. In the email chain, Quarles herself tells the securities firm that the target company is "too small for us to focus on at the moment." (Dkt. No. 76-3 at 13.) Nowhere does Quarles claim that Defendants intend to pursue the company or what Defendants' acquisition strategies might be. Moreover, neither Quarles nor the salesman from Wedbush state that the information they exchange is confidential or should not be shared. The Court therefore finds a lack of sufficient information presented to find that compelling interests outweigh the public's right of access. The Court DENIES the Motion as to this email.

**CONCLUSION**

As to Exhibits 14, 15, and 17 to the Jacobson Declaration, the Court finds that Defendants have marshalled sufficient evidence to justify their sealing. The Court therefore GRANTS the Motion as to these documents. The Court ORDERS the Clerk to seal Dkt. No. 76. The Court further ORDERS Plaintiff to publicly refile in a single docket entry all of the materials filed in Dkt. No. 76, while omitting Exhibits 14, 15, and 17 to the Jacobson Declaration. Plaintiff must do so within 7 days of entry of this Order.

The Court otherwise DENIES the Motion and finds inadequate evidence presented to merit the sealing of any of the other documents.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 10, 2025.

Marsha J. Pechman
United States Senior District Judge